Alright, I don't have any experience in orally arguing the case, but I want you all to know that I have persisted in requesting this oral argument because the district court has completely disregarded the requirements of Rule 8 pleading and Rule 12b6 motion to dismiss requirements. It seems to have failed to recognize that the facts alleged in paragraph 5 of my amended complaint do in fact constitute a disparate impact claim under the ADEA. In the entire 11-page district court order dismissing my case for failure to state a claim, the court devotes only 8 or 9 lines on pages 7, and that's lines 9 through 16, to the actual question of whether the facts I have alleged constitute a claim for disparate impact under ADEA. Also, since defendants have relied entirely and mistakenly on the old disparate treatment legal theory under the McDonnell-Douglas framework, I want to make sure that everyone understands that this theory is not applicable to my case. Disparate impact is a relatively new development in ADEA, and it was only in 2005 that Smith v. City of Jackson, Mississippi, resolved a split in the circuit court recognition of disparate impact under ADEA. This case dispelled any notion that a disparate impact claim was not cognizable under ADEA. Disparate impact is also known as adverse impact, and it's distinctly different from a disparate treatment theory. There are two primary claims in this lawsuit, a disparate impact claim under age discrimination in the Employment Act, and a claim against the individual, which can be brought under 42 U.S.C. Section 1983 or other provisions of the United States Constitution's 14th Amendment. Then there's also an issue of the designation by defense counsel in this case to the district court that the decision be unpublished. Publication determines precedent in this case and the rule of law in this country. The authority to make those selections was granted by Congress to the Ninth Circuit Court of Appeals, and the procedure is fully set forth in the Federal Rules of Appellate Procedure. There's no parallel in the Federal Rules of Civil Procedure, which governs district court practice. Finally, there is the question of whether the work-sharing agreement between the Equal Employment Opportunities Commission and the Arizona Civil Rights Division, which provides that the state Civil Rights Division gives defendants adequate notice of a plaintiff's claim to satisfy the state's notice provisions under Arizona revised statute. This can only be determined, this being whether the notice is adequate, it can only be determined by a close examination of the work-sharing agreement. And while the district court order declares that it does not satisfy the requirements, the court offers nothing by way of support to indicate that their statement is supported by a careful review of said agreement. If this dismissal is reversed, this review can be made in discovery, and I would follow up on that. Additionally, there are several points related to disparate impact that I think deserve special attention. The first is the district court's complete failure to acknowledge the facts alleged in paragraph 5 of my very short amended complaint that do satisfy the criteria for the prima facie disparate impact claim. To which, at order page 6, lines 21 through 24, the plaintiff must identify the specific employment practice or selection criteria being challenged, must show disparate impact, and must prove causation. This is taken from the Rule 56 summary judgment decision in Rose v. Wells Fargo. However, after stating that, the court then skips over any analysis of alleged facts in my amended complaint and goes on to discuss how they jump right to a discussion of how the reasonable factor other than age exemption to the law, and it's known as an RFOA exemption, can defeat my claim. This analysis is appropriate to a Rule 56 motion for summary judgment, and that is what Wells Fargo is, Rose v. Wells Fargo is, but it's not appropriate, an appropriate discussion for a 1236 motion to dismiss. My amended complaint satisfies the prima facie criteria at paragraph 5 of the amended complaint. Number one, I specifically identified the city's employment practice. That is, placing the deterrent message in the employment application instructions on their website, and it was a really subtle and chilling and deterrent message to older workers on how the application must be completed. The application form with the message is attached as an exhibit to my amended complaint. It requires listing all of the experience you possess, quote, unquote, and failure to list all work history will be considered untruthful. My alleged facts show the disparate impact, the effect, and this is a quotation from my complaint, the effect was chilling and totally dissuaded plaintiffs from making any application to the city. The third element of the prima facie case is causation, and the above facts show that my deterrence was caused by the subtle, chilling, underlying message conveyed in the employment application instructions. Even though they're facially neutral, they had this deterrent effect on me, and I'm probably not the only older worker who's ever looked at this and thought, well, why bother? It's obvious. They don't want people with lots of experience. So I should be given an opportunity to gather evidence to actually prove that the disparate impact not only applied to me, but also deterred many, many other older workers. The court's cursory factual analysis inaccurately paraphrases the facts. It speaks of defenses of proof that might be acquired through discovery, and, of course, they don't admit to the subliminal message that's contained on their website, and they refuse to acknowledge that the facts in my amended complaint satisfy the enumerated prima facie criteria. The court just discusses mainly how my claim will fail, because defendants can claim a reasonable factor other than age and RFOA exemption. But that is irrelevant to the question of whether the facts allege a claim for which release can be granted. Jury trial has been demanded by both sides in this case, and the burden of proving that its justification for requiring many pages of irrelevant work history is, in fact, reasonable rests on defendants. And, of course, there is no evidence on that subject at this stage in the proceedings. Nevertheless, in a surprising, and I was quite distressed at the court's display of lack of impartiality, the judge set herself up as a jury and without any of the justifications required from defendants as to the RFOA exemption they claim, prejudged the question in favor of defendants and improperly dismissed this case under 12b-6. The district court's order as to my disparate impact claim should be reversed and the case remanded to a different and totally impartial judge. The law itself is stated in relevant part in the EEOC's Regulations 29 CFR 1624-4, Paragraph A, and states, Help-wanted notices or advertisements may not contain phrases that limit or deter the employment of older individuals. In this type of claim, logic dictates that there will most likely not be an employer-employee relationship since older workers have been deterred from even filing an employment application. EEOC Regulation 29 CFR Paragraph 1625.7d further states that any employment practice that adversely affects individuals within the protected age group on the basis of older age is discriminatory. Ms. Cummins, your time is up. We'll now hear from Ms. Voelpel. Thank you. Ms. Voelpel, are you there? I am, Your Honor. Okay. Would you proceed, please? Yes, Judge. I'd like to go right to the disparate impact claim because Ms. Cummins has essentially conceded that she's not asserting a disparate treatment claim, which I think that at least some of the allegations in the complaint dealt with a failure to hire. So I'll deal specifically with Paragraph 5 of the complaint. First of all, the United States Supreme Court made it clear in Smith that a complaint must allege a disparate impact claim under the ADEA with specificity in order to proceed past the pleaing stage. And that is because although Smith allowed and said that disparate impact claims are available under the ADEA, it emphasized that the scope of disparate impact liability is narrower under the Age Discrimination Employment Act than it is under Title VII. And that is because first, the 1991 Civil Rights Act never modified the strict Orange Cove criteria as the ADEA claims, which was applied by this Court in Rhodes and in other cases and by courts throughout the country, and that the ADEA's inclusion of the RFOA provision means that even certain employment criteria routinely used by employers may be reasonable despite their adverse impact on older workers as a group. And we would contend, first of all, that requiring a comprehensive resume, a comprehensive work history is a very, very widely used practice by employers, not just public, but by private and public employers throughout the country. And as far as to meet the Smith-Wards Cove standard, a complaint must isolate and identify the specific employment practice allegedly responsible for adverse statistical disparities, and assuming that the court feels that Ms. Kerman's complaint satisfies that first prong by specifically identifying the city's as the employment practice that is at issue, then virtually every court, including this Court in Rhodes, has felt that this means not just identifying a particular employment practice, but alleging in the complaint sufficient statistical data indicating that the particular practice disparately impacts the protected group. And that is a combination, really, of the second and third factors identified under Rhodes and under Smith-Wards Cove, and particularly the third one, that the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants because of their membership in a protected class. And although Rhodes reviewed a grant of summary judgment, this doesn't mean that a plaintiff can wait until after discovery to allege facts sufficient to raise a disparate impact claim above the specific level, especially in light of its convoy. Now, Ms. Kerman's amended complaint fails to state a disparate impact claim because, and focusing in on the complaint at paragraph five, the only factual allegation that Ms. Kerman's offers in support of this claim is her own anecdotal story that because of the city's work history requirement, she was dissuaded and discouraged from applying for the accounting position or any job with the city of Yuma. She then makes the jump in a conclusory and speculative statement that the form placed an onerous and irrelevant burden not just on her, but on all very experienced applicants who are usually older persons. And if you look at cases throughout this who have applied the second and third factor, particularly in ADEA claims, but in employment industry impact claims generally, that kind of conclusory jump is a speculative statement is simply not sufficient to state a claim under 12B6, especially in light of swambly. And, you know, I can go through some of the other factual allegations that she makes regarding various advertising and hiring methods and the prior fact the city to require type of original applications. I think that, you know, those deal more with the odd position that they're time barred and the continuing violation theory is inapplicable in this case. But, again, I'll just focus in on the allegations regarding Paragraph 5, because that is really where Ms. Cummings is arguing that that states claim under the pleading requirement. Virtually every case that I could find, district court case and otherwise, reviewing the sufficiency of a disparate impact claim under Rule 12B6 simply did not allow the plaintiff to proceed where no statistics or even inadequate statistics were included with the complaint. And there's a Bonaca v. Warner Brothers, which is a district court case out of the Central District of California, where the plaintiff claimed, co-pro plaintiff, claimed that movie studios use subjective hiring systems that significantly impact African-American directors. And the claim was dismissed under 12B6 for failure to provide specific statistics at the pleading stage showing an approximate number of qualified African-American directors and an approximate number of directors actually employed from different racial groups in the movie industry, which this court requires them to provide on remand. And the district court had previously dismissed six of that plaintiff's prior complaints that went back and forth between the district court and this court because of his failure to provide any either anecdotal or statistical evidence other than his own allegation that he had been allegedly rejected from numerous director positions. And finally, this court did affirm after numerous times he failed to provide that information at the pleading stage. In another case that is remarkably similar to this case, Brown v. Coach Stores, which is at 30F2nd 611, a receptionist for Coach filed a lawsuit against Coach for repeatedly passing her over for promotion. She argued the system that it used for promotering and hiring desperately impacts minorities. The district court first noted that one cannot reasonably expect to be considered for a job for which one has not applied. And then it dismissed with prejudice her disparate impact claim, noting that the statistics from, and she included statistics from the Equal Employment Opportunity Commission showing minority compensation of the overall Coach workforce, and the court determined that he was not even sufficient to stake a claim of disparate impact, and that's even under Title VII. And there are numerous other cases, U.S. v. NARA Bank, which is another California district court decision in 2010, Bennett v. Schmidt, that's out of the Northern District of Illinois, repeatedly finding that the failure to provide any statistics whatsoever means that the plaintiff has not sufficiently stated a claim for disparate impact under that causation theory. It cannot just be mere speculation and say, well, let me go into the speckling now. This is a situation where Ms. Cummins got on the Internet, took a look at the city's application, and instead of even attempting to get a job, just decided to file a lawsuit. And respectfully, as this court's docket indicates and as we indicated in our brief, Ms. Cummins has a history of doing that. She's had seven lawsuits against various entities, including the city of Yuma, the county of Yuma, the state of Arizona, Social Security Administration, and I think that, you know, clearly the district court was also obviously aware of that. And I think before just allowing this to proceed, the district court clearly, you know, said I'm going to apply the Rose and Schmidt criteria. And if you look at pages six and seven of the court's decision, you'll see she didn't just jump to the RFO's OA provision. I think that she certainly could facially acknowledge that requiring a comprehensive resume is reasonable on its face because it is such a widespread practice used by employers in virtually every realm of employment. Thank you, Ms. Vogel. You're out of time. Ms. Cummins, thank you, too. The case to start you just submitted. Good morning to both of you. Thank you. Thank you very much. Thank you.
judges: Wallace, Noonan, Silverman